Good afternoon, Your Honors. May it please the Court. It's still morning. Is it still morning? My clock is still on East Coast time. I'm sorry. My name is Bradley Stull. I represent the plaintiff, the personal representative of the estate of Peter LaHaye. I'm here for two reasons. One, I'm asking the Court to reverse the trial court's entry of judgment and enter judgment in the plaintiff's favor. The second is remanding for a new trial on defect based on a misapplication of the General Aviation Revitalization Act of 1994. My request for entry of judgment is based on whether or not the plaintiff's preserved a claim that by placing a defective product in the marketplace, in this case by placing the maintenance procedure in the maintenance manual to begin with, was a recognized claim for that particular trial. The claim is that it should not have been left to third-party mechanics.  It should not have been left to third-party mechanics. And the reason why I'm asking this is because I don't believe it's a separate designation. It's a product liability claim, but, yes, the implementation claim. And the reason why I draw the distinction is because what really, what it is, is by placing, implementing the procedure, Israel Aircraft. The claim is that it should not have been left to third-party mechanics. Is that right? Exactly. They should have had, I guess, experts or not experts, but people who had specialized. What we argued was that this procedure was too dangerous to be done on wing by mechanics, that it should have been done off wing by the manufacturer or a specialized facility. Okay. Now, I took a careful look at your pretrial conference order and the trial brief. And I guess there's one argument that in paragraph 3 of the pretrial order, you could construe that very broadly to encompass this claim. But then when you go to the brief, it's not addressed in the brief. I'll be the first person to admit that the implementation claim by its name, it's not in there. And I think under the Ninth Circuit authority of DP Aviation, where the Ninth Circuit said that these pretrial memorandums should be read broadly and embrace any claim that comes within the wording. And I believe that that's what happened in our pretrial memorandum. I mean, the words, the written procedures and drawings, I mean, the procedures were dangerously defective. Why were they dangerously defective? Because they caused the mechanic to have to work in a very small place, that it shouldn't have been done on wing. And if the court were Israel Aircraft. That takes a lot of filling in the blanks. I understand. It takes some filling in the blanks. But I think it comes within the language of what is said in the pretrial order. And taking just a quick look at the DP Aviation case. When the Ninth Circuit looked at it and said, you know what, this language is sort of vague. Let's look at the totality of the circumstances. And how the court handled that is what it did. It looked at what happened at trial, what happened before trial, to see if that particular aspect, if there was an aspect of what damages were claimed, was actually included. And what I did in the reply brief is I showed in our interrogatories where it specifically stated, Roger Shoffley will testify that the procedure was dangerous and should not have been performed on wing. All the expert reports said the procedure was dangerous and should not be performed on wing. Wayne Oberg, our maintenance expert, said, it's my opinion now that this is too dangerous and the mechanic can't do it correctly. Leading up to trial, that was completely disclosed as the claim. And when it comes to the pretrial memorandum, perhaps in hindsight I should have been more explicit. But I thought I had it covered by saying that the procedure was dangerously defective by basically mirroring the language of the Washington Product Liability Act. At trial, in order to get to this next step, the court would have to accept that the claim itself was included in the pretrial memorandum and it was proper for the judge to rule on it. And if that is so, I submit to the court the record is really uncontroverted on that issue and that we are entitled to judgment on that issue because the record is completely full and there's nothing that Israel Aircraft did at trial to counter that. They had one individual, Don Hammer, who was a mechanic, say the procedure is simple because it's only three pages and very few steps. One thing we objected to Mr. Hammer being able to testify because, one, Mr. Hammer never performed the procedure, never saw it performed the way that it was performed in 1999. He only saw it performed as modified after the accident with all the necessary safety steps and revised drawings. And we, the judge overruled our objection to prevent him from testifying. I don't think his testimony can bear on that issue. And looking at the record as a whole, we proved it by preponderance of the evidence. I want to use the majority of my time to discuss the General Aviation Revitalization Act. And I think as kind of a prelude, the Ninth Circuit is really the only court of appellate authority in the federal court system that has looked at this statute. And a lot of the courts across the country look to the Ninth Circuit to see, you know, how should this statute be analyzed. And this case presents an excellent opportunity to really discuss the entire statute and how it should be implemented on the basis of, one, what is a manufacturer, two, how to apply the rolling provision of GARA, and three, how to apply the misrepresentation exception. First, with any GARA analysis, we need to determine whether the party has standing to assert it. And that's what is a manufacturer. The word manufacturer is not modified. It's not described. It's not defined in the statute itself. One interpretation would be manufacturer means the Webster dictionary definition, somebody who builds. But taking that to its conclusion, other courts have had problems with that, Precision v. Burroughs and in one from the Iowa Supreme Court, which I have cited in the brief, Mason v. Schweitzer Aircraft. And the problem comes that the federal aviation regulations assign responsibility to entities who don't necessarily physically manufacture a product. And in that sense, the courts have looked to the legislative history to determine what Congress was intended to do when it passed the act. And, for example, in Precision, where the defendant didn't physically manufacture the part but was currently responsible because it was a successor, the Court stated that, well, Precision is being sued in its capacity as a manufacturer. It's being sued because it has a responsibility to issue maintenance manuals and it has responsibility to the FAA. It's really the entity that is the de facto manufacturer. And that has application here. But in order to get there, you cannot deny the fact that the legislative history and the General Aviation Revitalization Act itself was meant to revitalize the United States aviation manufacturers. Israel Aircraft is an Israeli manufacturer. So the issue becomes, can a foreign manufacturer claim protection under a statute designed to revitalize the U.S. economy? And one of the issues Congress discussed in the legislative history was that foreign manufacturers have an advantage over domestic manufacturers. But how easy is it to say American manufacturer? Oh, very easy. And it doesn't say that, right? It doesn't say. The statute does not say that. What Judge Lazik did below is exactly that. He said the manufacturer is unmodified, therefore, manufacturer means manufacturer. That gives a problem. A lot of us don't look to legislative history if the language is clear. Exactly. And if you look and if that's the case, in this particular instance, Israel Aircraft Industries didn't physically manufacture the part that it's being held responsible for, the horizontal stabilizer trim actuator. So in that sense, if you give that analysis of the word manufacturer in one part of the statute, look at the repercussions in the other part of the statute. Therefore, this company, who pulls the product out as its own, issues a maintenance manual, discusses the safety of it with the FAA, is responsible for it under the Federal Aviation Regulation. Well, what about Lion? Even though it didn't specifically address this, wasn't the manufacturer there Italian? Yes, Your Honor. In Lion v. Augusta, Augusta is, I believe, an Italian manufacturer. And my argument for that is basically that the issue wasn't addressed. By inference, perhaps the Court condoned the application of GARA to the foreign manufacturer, but in application it wasn't argued. And I'm trying to argue that here to push that envelope. Basically to set down what is a manufacturer. Well, it doesn't put the final nail in the coffin, but it does. It doesn't say it specifically, but it has similar facts. It's persuasive, and it cuts against my argument in a way. But I'm trying to stress to the Court that it just wasn't decided. And had it been addressed, you would have been presented with this issue, whether or not the GARA was. How about the exceptions? The exceptions. When we get into the exceptions, we really the first step, I believe, is to address the Ninth Circuit case in Kennedy v. Enstrom. Now, that was different, but in that case, the Court said there is an explicit right to withstand trial. And in that case, none of the exceptions were even argued. So in this case, Israel Aircrafts argued we have an explicit right to withstand trial, but the exceptions are applicable here. And I would ask Kennedy to be limited to its facts of perhaps that language of being a right to withstand trial. So with no exceptions present. Here the exceptions are present. First off, the rolling provision isn't an exception. It's just how you apply the time period. The exceptions are the one about the misrepresentation to the FAA. Misrepresentation to the FAA, certainly. Knowing misrepresentation of acquired information to the Federal Aviation Administration for withholding or concealing of information, total disjunctive exception. Is it intentional concealment? No, Your Honor. It's knowing misrepresentation. What does knowing mean? That they had knowledge of what they were saying was untrue. Intentional, knowing, I guess you can't really knowing misrepresentation. The intent must be implied in that part of the exception. For example, if the FAA said we think this product is unsafe because of X, Y, and Z, and the manufacturer says, no, it's fine. Knowing deep well it was, in fact, defective. Well, focusing on that exception, let's assume that you can show that there were some things that had the FAA known they wouldn't have certified. What evidence is there in the record that they knew it and they knowingly concealed it? That's where I don't see it. I don't see that in the record. I see the ---- Perhaps your concern is that the plaintiffs haven't met the knowing misrepresentation part of the exception. Yes. I submit that we've met the concealing or withholding part of the statute. In order to do that, plaintiffs have to show a duty to disclose the information. And I've ---- So are you saying they could conceal it accidentally and you'd still get the exception? Yes, Your Honor. There's no modification of ---- Well, concealing sort of implies doing something on purpose, the word itself. Well, look at the purpose of the exception. I mean, the statute of repose declares a product undefective, if you will, if it lasts for 18 years. One of the statutory exceptions is if the manufacturer prevents the FAA from knowing about the safety issues of the product. And here we had an affirmative duty of Israel Aircraft to perform a test at certification of the aircraft being able to fly with a disengaged horizontal stabilizer linear actuator. That was not done. And I submit to the Court, by not doing that, Israel Aircraft ---- Okay. They didn't do it. Correct. They had to do it. Correct. I'm still not seeing the knowing here. I mean, I'm not saying it has to be a statement or something like that, but there's got to be some evidence. Perhaps in this situation the knowing comes by implication of the rules that an aircraft manufacturer is presumed to know the rules of certification, of what it needs to do. Well, then you'd make it strict liability. Not necessarily, because ---- It's something more than that. There's got to be, you know, not ---- You can't just show that they didn't do it and that ---- It's something more. Now, that's ---- Just show me some evidence of something more. The only place where I can go for that evidence on this record is the statute itself, which says that the manufacturer must show by tests, so forth, that this thing can fly if the stabilizer actuator is disconnected. They didn't do it. I can't give you the document that says, we're not going to do this test. We know it's supposed to be done, but we're not going to do it. Well, and I wouldn't expect that that would be the evidence that would be required. But I would expect it would be more than the statute. I think in this case, Israel Aircrafts is deemed to know that it didn't perform the test by testimony of Ilana Podlatsky at her deposition, where we asked her what tests were performed. And she listed the test of jamming and the test of a runaway trim actuator. And we asked her, was there a test done for the decoupling of the actuator? She said no. Israel Aircrafts knew it wasn't done. The issue comes in, well, did they know they were supposed to do it? And I think by virtue of these Federal regulations which say must, the manufacturer has to have an obligation to know what it needs to be done before it submits something to the Federal Aviation Administration and says, here it is. We've complied with certification. Please sign off. And it's that legal duty. In some cases, you won't have a legal duty. Here you have it specifically in the statute for both the failure mode test and the stops on the outside of the stabilizer. I just wanted to ask you one question about the district court's causation ruling. What's your best argument that the district court's holding of lack of causation, in fact, is incorrect or is erroneous? Everything that the district court based its opinion on that causation was not proved has been disproved on appeal, more or less.   They've got a list of pages. It says Mr. Gowan testified that he didn't ñ he never saw the pages in the book and then he testified that he did see the pages in the book. Well, that's simply not so. The issue here is that Service Bulletin 133 was a separate document. Mr. Gowan always testified I never saw the Service Bulletin, the physical Service Bulletin. That Service Bulletin was later put into the maintenance manual. And Mr. Gowan always testified ñ and it wasn't called Service Bulletin 133 when it was in the maintenance manual. It was just a part of the maintenance manual dealing with flight controls. And Mr. Gowan always testified I had the manual in front of me when I did the ñ when I was doing the work. He never said I never ñ I didn't have the manual. He never said I didn't rely on the manual. Now, Judge Schlaznik listened to his testimony, considered what he said, observed his demeanor, found he was biased. Yes. And then he just found him ñ he couldn't credit him. But what he does is ñ He couldn't credit his testimony. And then he decided that he wouldn't credit it because he found him so lacking credibility that he wasn't about to accept part of his testimony for one purpose and discredit all the other testimony. He just ñ he just said I don't believe you. I don't believe anything you're telling me. You're out. That's what he said. But taking that to what it means is that Judge Schlaznik decided I don't believe Mr. Gowan said ñ when he said he didn't perform it. I think he performed the procedure. I don't believe Mr. Gowan when he said he used the manual. I don't think he used the manual. I don't think the judge could jump to the conclusion that, okay, I believe Mr. Gowan performed the procedure and didn't use the manual. Sure you can. That's what judges and juries do all the time. When you ñ after you hear everything, the question is does evidence support that? And there's evidence both ways. And it's an uphill battle on when someone's made credibility calls and resolved factual disputes. But that's what juries do in a jury trial. That's what judges do in a bench trial. If I'm up against the judge's character assessment of Mr. Gowan, I have a very uphill battle. I understand that. I believe that the facts of record disprove a lot of what the judge relied on. But perhaps it's not the right form. But I truly believe that the judge's assessment of Mr. Gowan's credibility, for the reasons in the brief that I started, many are not so. I do have a minute left. Would you like to save that for rebuttal? I guess I should. Thank you. Thank you. Thank you. Good morning, Your Honor. May it please the Court. I'm David Jacoby. I'm here for the defendant, Appley, Israel Aircraft Industries. And for brevity, I'll refer to them as IAI from here on out. Your Honor, I, too, will address the unadjudicated claim issue, and I also will address Gara. And let me begin with just a little bit of factual background, because I think that there are two huge gaps in the plaintiff's case. And those two huge gaps explain, one, why Judge Lasnik dismissed the product defect claim under Gara and the 18-year statute of repose, and, two, why he found on the merits that there was no causal link between the Service Bulletin 133 procedure and the injury here. And that covers both the illustrations and instructions claim and also this unadjudicated claim about implementation of SB 133, because SB 133 was never done here. In fact, SB 133 never should have been done here, and there's no good explanation for why it was done here. If it was done, it was done in direct contravention of the instructions and the maintenance schedules. The first huge gap is that the trim actuator system on the West Wind aircraft worked without failure for decades, and we had no reason to believe that separation was even reasonably likely. When the actuators were discovered in the fleet with Warren jack screws and tie rods during the early to mid-1990s, we immediately reported that to the FAA. When another one was discovered in 1996, we said, this is not necessarily an isolated problem. We're going to look into this, and we instituted Service Bulletin 133, which was to go out and inspect in the field and find out, is this a pervasive problem, do we need to do more? And when we found out we needed to do more, then we instituted SB 136, and that was the bulletin that said, let's pull them off the aircraft, send them back to the manufacturer, have them overhauled, and reinstall them, exactly as the plaintiffs argued we should do. And that, in fact, is what was done on the LaHaye aircraft. In 1998, at IAI's urging, the FAA instituted the Airworthiness Directive that required removal, overhaul, reinstallation, and that had already been done on the LaHaye aircraft. So the question is, why are we even here? It had already been done. There was no reason to do anything else. And, in fact, even Mr. Gowan testified he knew that. All he was supposed to do was determine whether there was an overhauled actuator in that aircraft. And if he determined that there wasn't, then he had to order one and have it installed. That's all he was supposed to do. So how was this actuator torn down at Galvin? Frankly, we don't really know. Because Mr. Gowan kept changing his story constantly about what it was he saw, what it was he did. At one point, he said it must have been someone else, although there's absolutely no record of anyone else having touched that actuator. All we know is that Mr. Coates looked over the work very briefly and really didn't look at all because Mr. Gowan told him he hadn't touched it. So that's what breaks the chain of causation. And that breaks the chain of causation both with respect to GARA and also with respect to the instructions and illustrations for SB 133 and the implementation of 133. Now, let's talk about the unadjudicated claim issue. In other words, was it preserved in the pretrial, and it wasn't? And, secondly, is it harmless error in any way to the plaintiff? Well, the point is, if there was an error here, because LaHaye was permitted to put on and offer proof at trial, a substantial one, and after his original decision, when he was prompted to rule on that specific issue or that theory, and it's really just an adjunct to the other one. The court said it didn't meet the burden, right? The court said you didn't meet your burden of proof for the same reason, because you didn't link it up. You don't have the process of linking up the two. And the proximate causal link, it's not there, because the implementation of SB 133 doesn't have anything to do with this injury. SB 133 didn't apply. And furthermore, what the court said was there isn't any evidence that near implementation caused the injury. There were scores and scores of these inspections done in the field. There, other than in this one case, was never an aircraft that left the repair station and went up in the air with a misassembled actuator. This is the only one. And the plaintiff's experts all testified that if you just improved these supposedly defective instructions and illustrations, it could be done. But that doesn't even link up with this case, because there was already a manufacturer overhauled actuator in this plane. And there was nothing in the instructions or the maintenance schedules that called for that actuator to be torn down. There's no explanation for why it was torn down, other than, well, if you believe Mr. Gowin, he didn't even do it. Some rogue mechanic did it and left no record of why. So we surely can't link up the two. And when the court ultimately found that Mr. Gowin did something that screwed everything up, right? He did. He did. Well, that's what the ‑‑ from the ‑‑ because the court looked at the time that he said that he spent and the time that he said he didn't do anything, and he said, well, that's just about the amount of time that it would have taken to do such and such, and that's what I think you did, because, you know, I don't believe you.    I'm not going to argue with you. He found him to be biased because of some also contact with a family member. Exactly. And things along those lines. Yes. And the other reason, of course, is that he's the only person who appears in the records. The records for these aircraft are very carefully kept. It would be extraordinarily unusual to have someone work on an aircraft and have nothing in the aircraft logs. And the log specifically says he's the guy tasked to work on the actuator. It says right there. He's the one. Who else would have done it? Was it improper ‑‑ assuming that he ‑‑ well, the judge found that he had broken it down, but was it improper under the bulletins to have broken it down? Well, yes, because it wasn't called for. It was a recently overhauled actuator. There was no reason to take it apart at that point. Absolutely none. It wasn't called for in any of the maintenance schedules. There was no reason to do it. And that would be improper, I guess, under the bulletins or in the industry. Right. I mean, you don't do that sort of thing. This was less than 18 ‑‑ I think fewer than 18 months old at this point. There was no reason to tear it down. It wasn't up for inspection. It had just been overhauled by the manufacturer off the plane, just as the plaintiffs say it should have been. Garrett, question one, are we a manufacturer? Well, yes, we are. We manufacture aircraft. We were being sued in our capacity as manufacturers, not in our capacity as a repair station or a seller or anything else. We were being sued for designing and manufacturing the airframe and incorporating someone else's actuators. It seems kind of odd, you know, the whole purpose for Garrett was to protect the American manufacturers against foreign manufacturers. And then in the end, we end up applying Garrett to the foreign manufacturers, give them a little additional protection. I guess I differ with you on that, Your Honor. I'm just making it up. It was to protect the American manufacturers to the extent of putting them on an equal footing with the foreign manufacturers, so that the liability schemes would be somewhat comparable. There's no indication that it was intended to skew in one direction or the other. And, in fact, if you just read the plain language of the statute, it says manufacturer. It doesn't say domestic manufacturer. And you really can't read that into it. And to do so would really be, I guess on some level, toying with international relations and going places that, of course, just don't go. And I think that's pretty simple. The next issue is with respect to the overhauled actuator, did that reset the clock? Well, the answer in the case law pretty consistently is no. And, in fact, even the case that LaHaye has asked the Court to look most closely at, a case that they've highlighted and that, in fact, her counsel was involved in, the Hartzell case in the Eastern District, just flat concluded that putting an overhauled part in, essentially as an exchange for the existing part, it's not new. And even if it were new, it's new only with respect to the manufacturer of that part. In other words, if you look at the legislative history, it's pretty clear. Campbell talks about it. The way this rolling provision works is if, for example, in the overhaul of that part, there were a defect that resulted from the overhaul. They used, you know, weak metal or defective component parts in the overhaul. The clock would restart as to that manufacturer, and the injured party could sue that manufacturer. But as to the airframe manufacturer, there's no change. It's the same design, the same specced part, the same interface with the airframe, which remains unchanged. So the clock doesn't restart. So now we know that on its face, GARA applies, and there's only one way out of GARA, and that's the exception. And this is the exception for knowing misrepresentation or concealment or withholding from the Federal Aviation Administration. Now, where is it here? What did we allegedly misrepresent or withhold or conceal? And they've really pointed to two things. One is, their experts say that way back ab initio, when we had the airframe certified, we should have done an FMEA test to determine what happened to the airframe. What happens with separation? Well, first of all, the regulation doesn't specifically say that. And, you know, you can always, in a negligence case, find an expert who 30 years later will say, well, you know, if you had really done this right, you would have considered this design parameter, and you would have tested for this design parameter, and if you did, you would have found X and Y. We didn't. It was never considered a design consideration. And, in fact, it never was. For decades, there was never a separation. This is the only separation, and it occurred not because of the design, but because, essentially, of abuse of the part. This is the only time that one of these went up in the air without the tie rod in it. And then they've pointed to some communications in the 90s when we were considering the fact that we had these aging actuators, there were some generations of them. There were some jack screw problems, some tie rod problems, and we asked the manufacturer, hey, you know, can these things unwind? And they came back and said, it is virtually impossible. It's not going to happen. And, again, it never did happen except in this one case. So what did we do anyway? We continued the inspections. There was never a separation as a result of the inspections. We then went on, when we found that there was a degradation of these parts because of age mostly, we mandated use of overhauled, you know, essentially new units, replacement units in all of our planes. Now, how does that show that we're withholding, that we're concealing, that we're intentionally misrepresenting? Well, to find out what those words mean, you really have to look at the cases and see how it's been applied. Well, I think he's claiming that you didn't comply with certain stops. There were stops. I think that's fair. Well, Your Honor, again, that's simply a matter of expert opinion and interpretation. Because if you look at 4B, the old CAR 4B, it doesn't say that you have to have external stops. It says you have to have stops. And, in fact, this actuator is designed with both mechanical and electrical stops to limit the range of motion so it can't run away. That was the whole idea. Well, I guess if I'm understanding your argument, well, his argument is obviously the existence of those requirements. Because I pressed him on that, and he said, no, I can just show you that this is what was required, they didn't do it, and, therefore, they must have either concealed or, you know, misrepresented. Exactly. And what you're saying is, okay, that's not correct, but you're also saying that the record has a lot of evidence in it. That is contra to any, you know, that we just, we didn't have any information. We kept asking questions. You know, we were very concerned. We kept asking questions. Nothing ever came about that. Well, and it goes beyond that, Your Honor. If you look at the cases, for example, in Rickert, in Rickert you have a manufacturer who knew of failures or knew of specific defects, and there was testimony that they intentionally did not tell the FAA about that. That's what you had in Rickert. If you look at Bell, there were, I think the way the Court put it, this is the California Court of Appeals case, there were numerous catastrophic failures of the parted issue, and Bell did not make reports to the FAA. If you look at the Hartzell case, the plaintiff tried exactly what the plaintiff here did, which is to rely on expert affidavits that basically said this was negligent, or I think I know what they had in mind and I'm here to testify about their scienter, and the Court rejected all that. But there were two things that they showed that the Court said created a question of fact about the exception. One was they misreported specific test data. Well, that didn't happen here. And the other was they didn't report failures, just like in the other cases. That didn't happen here. The record shows that every time we were made aware of a problem, even if it wasn't an outright failure, the wear and tear on these actuators, we sent reports to the FAA. In fact, we were the ones that pushed the FAA to require fleet-wide replacement with overhaul units. Now, in that context, you just can't say that there was intentional misrepresentation, knowing misrepresentation, concealment, or withholding. And I'd like to speak to that point, too, because, you know, there's this little syntax argument about how the statute exception is structured. It says, knowing misrepresentation or knowingly misrepresented, comma, or concealed or withheld. I don't think that makes a difference. That's a nice little word game, a nice little play with the punctuation. But you can't conceal or withhold what you don't know. There's an element to scienter there. There has to be. And aside from just the gloss on the text like this, just as a practical matter, if mere negligence alone is enough to avoid the 18-year statute of repose, the statute of repose means nothing. Plaintiffs are claiming negligence to start with. And as Judge Callahan pointed out before, really where the plaintiff is going with their construction of this exception is strict liability. There's a test you should have run. You didn't run it. Sorry. That's not how a statute of repose works. It's supposed to provide more protection than that. Just very briefly, I have a couple of minutes left. If the Court would like me to address any of the other assignments of error regarding the trial, I will. There was the trial by jury claim. I think that's very, very clear. There's the whole issue about did the judge properly weigh the evidence? Did he properly weigh the credibility of Mr. Gowan? I think that's a non-starter. Those are all clear error standard of review matters. And I think it's very clear here that the record was replete with reasons not to believe Mr. Gowan. The preponderance of the evidence was that there was no causal link. That's what the record showed. Or put another way, the plaintiff failed to show by a preponderance of the evidence that there was a causal link. And the whole house of cards comes down. When you go there. Okay. Thank you. Very important, Your Honors. Israel Aircraft is asking for a dangerous interpretation of the rolling provision of Garrett. First, they're saying there has to be a change in the design of the replacement part. Only Caldwell v. Enstrom held that. And it held that with respect to a maintenance manual. How can you have a new maintenance manual if the words aren't changed? That cannot be applied to physical aviation parts. Throughout the life of an aircraft, parts are replaced over the course of the part, and it's the same design. And if you were to hold that the design change must be different, it would effectively nullify the provision, because these parts just aren't redesigned and placed in. There's overhaul schedules, and it's the same. It's an endurance statute. If the part lasts for 18 years, it's good. If it doesn't, if it breaks, it's no good. Second, can this tolling provision be applied to Israel Aircraft, who didn't physically manufacture the part? We had brand-new jack screws and brand-new tie rods, the exact parts alleged to have failed in this accident. Can it be stored to Israel Aircraft? I say yes, because Israel Aircraft is being sued in its capacity as the manufacturer of that part by virtue of holding the type certificate data sheet, which requires that part, dealing with the FAA with that part, issuing the service bulletins. Israel Aircraft mandated the work on that actuator, and that is different than Campbell. In this case, Israel Aircraft acted as the manufacturer of that part. And repercussions, if you, just real quick, any time a plaintiff sues, for example, a carburetor manufacturer, the carburetor manufacturer would say, we didn't manufacture the float inside of our carburetor. So therefore, we have to sue the float manufacturer. Well, perhaps the floats aren't defective outside of the carburetor application. Perhaps the horizontal stabilizer on your actuator isn't defective outside of an aircraft installation. It was Israel Aircraft who put that part in the aircraft, and by virtue of that, the tolling provision applies to them.  Thank you. We appreciate the arguments. The matter is submitted.
judges: Tashima, Paez, Callahan